**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| HARCO NATIONAL INSURANCE CO., | HONORABLE KAREN M. WILLIAMS |
| Plaintiff, | |
| v. | Civil Action<br>No. 25-1927 (KMW-MJS) |
| JAS GROUP ENTERPRISE, INC. *et al.*, | **OPINION** |
| Defendants. | |

APPEARANCES:

WALTER JOHN BUZZETTA, ESQ.
SAMANTHA KRASKER, ESQ.
STRADLEY RONON STEVENS & YOUNG
457 HADDONFIELD RD., SUITE 100
CHERRY HILL, NJ 08002

    *Counsel for Plaintiff Harco National Insurance Company*

MATTHEW L. ERLANGER, ESQ.
SHAWN R. FARRELL, ESQ.
COHEN SEGLIAS PALLAS GREENHALL & FURMAN
1600 MARKET STREET, 32ND FLOOR
PHILADELPHIA, PA 19103

    *Counsel for Defendants JAS Group Enterprise, Inc., Michael P. Sawyer, and Cathy Sawyer*

**WILLIAMS, District Judge:**

**I.     INTRODUCTION**

    Plaintiff Harco National Insurance Company brings this action against Defendants JAS Group Enterprise, Michael P. Sawyer, and Cathy Sawyer, seeking a Preliminary Injunction to obtain collateral and access to the books and records.

    This matter comes before the Court on Plaintiff's Motion for Preliminary Injunction, (ECF

No. 2). Defendants opposed the motion, (ECF No. 15). Plaintiff replied, (ECF No. 16). The Court held oral argument on April 14, 2025, and reserved its decision. For the reasons that follow, Plaintiff's Preliminary Injunction, (ECF No. 3), will be **GRANTED IN PART AND DENIED IN PART**.

## II.     BACKGROUND

Defendants sought surety bonds from Plaintiff for several of its construction projects, and prior to the issuance of the bonds at issue the parties entered into an Agreement of Indemnity, ("GIA"), on December 30, 2020. *See* Compl. at ¶¶ 9-10; Mot. for Preliminary Inj. at Ex. A. There are two paragraphs within the GIA that are pertinent to the issue at bar:

> INDEMNITY
> SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature . . . and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. The Contractor and Indemnitors shall deposit with the Surety on demand an amount of money or other collateral security acceptable to the Surety, **as soon as liability exists or is asserted against the Surety**, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to protect it from loss.
>
> DISCHARGE AND ADDITIONAL SECURITY
> THIRD: **The Contractor and Indemnitors will, upon the written request of the Surety, promptly procure the full and complete discharge of the Surety from any Bonds specified in such request and all potential liability by reason of such Bonds.** If such full and complete discharge is unattainable, the Contractor and Indemnitors will, if requested by the Surety, within five (5) business days, place the Surety in funds that are immediately available and sufficient to meet all of the Surety's liabilities that are in force prior to the date of the Surety's demand. **The Surety may make such demand for funds at any time and without regard to whether it**

> **has sustained any loss or received any claim.** The amount of such demand, including reasonable attorney fees and expenses, is at the sole discretion of the Surety.
> [. . .]
> The Contractor and Indemnitors waive, to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment. Failure to make immediate payment to Surety as herein provided shall cause the Contractor and Indemnitors to be additionally liable for any and all reasonable costs and expenses, including attorneys fees, incurred by the Surety in enforcing this provision.

Mot. for Preliminary Inj. at Ex. A, emphasis added. Thereafter, Plaintiff issued three bonds to Defendants: number 0503736, the "Newark Bond," related to "Contract 39-WS2025 City of Newark Phase 10 (B) Lead Service Line Replacement," with the penal sum of $10,209,870;[1] number 0503753, the "Lien Bond," related to the release of a construction lien in Mercer County, New Jersey, with the penal sum of $288,780.14; and number 0503756, the "Mount Olive Bond," related to a development in the Township of Mount Olive, with the penal sum of $3,383,305. *See* Compl. at ¶¶ 18 a-c; Mot. for Preliminary Inj. at Ex. B, C, D.

Since the issuance of the bonds, Defendant has encountered litigation. In March 2024, the Lien Bond became the subject of ongoing litigation, where $262,527.40, with interest and costs, is sought. Compl. at ¶¶ 19-20; Mot. for Preliminary Inj. at Ex E. On January 8, 2025, the City of Newark provided Plaintiff with notice that it was considering declaring Defendant in default on

---

[1] For liability to exist for the Surety (Plaintiff) pursuant to the terms of the Newark Bond, three conditions must be met:
If there is no Owner Default, Surety's obligation under this Bond shall arise after:
2.1 Owner has notified Contractor and Surety . . . that Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with Contractor and Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the Contract . . . and
2.2 Owner has declared a Contractor Default and formally terminated Contractor's right to complete the Contract . . . and
2.3 Owner has agreed to pay the Balance of the Contract Price to:
1. Surety in accordance with the terms of the Contract; or
2. Another contractor . . . to perform the contract.

Mot. for Preliminary Inj. at Ex. B.

3

the Newark Bond and enclosed with the notice a criminal complaint alleging that Defendants committed fraud in the course of completing the Newark Bonded Project by failing to replace all lead pipes in certain locations and submitting applications for payment falsely representing that the work was completed. Compl. at ¶¶ 22-25; Mot. for Preliminary Inj. at Ex.F. The Court notes that there is no litigation involving the Mount Olive Bond, but it has not been discharged. Compl. at ¶ 26.

On January 23, 2025, Plaintiff sent Defendants a demand letter that requested the full and complete discharge of the three outstanding Bonds, and collateral in the amount of $797,358.63. Compl. at ¶ 27; Mot. for Preliminary Inj. at Ex. F. A meeting was held between the parties and the City of Newark per the terms of the Newark Bond. Compl. at ¶ 28. On March 6, 2025, Plaintiff sent another demand letter, requesting collateral in the amount of $13,881,955.14 and requested to inspect Defendants' books and records, but Defendants have not complied. Compl. at ¶¶ 29-30; Mot. for Preliminary Inj. at Ex. G.

Plaintiff filed the instant action in Federal Court on March 17, 2025. Plaintiff seeks a preliminary injunction requiring Defendants to deposit $13,881,955.14 and provide access to Defendants' books and records. Mot. for Preliminary Inj. at 18.

### III.   LEGAL STANDARDS

#### A. Federal Rule of Civil Procedure 65

Pursuant to Federal Rule of Civil Procedure 65, ("Rule 65"), a court may issue a preliminary injunction only upon notice to the adverse party. *See* Fed. R. Civ. P. 65(1). Preliminary injunctions are an "extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578,

4

586 (3d Cir. 2002)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994). To obtain a preliminary injunction, the moving party must show:

> 1) a reasonable probability of eventual success in the litigation, and
> 2) that it will be irreparably injured . . . if relief is not granted[.]
>
> [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account, when they are relevant,
>
> 3) the possibility of harm to other interested persons from the grant or denial of the injunction, and
> 4) the public interest.

*Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Port Auth. v. Transam. Trailer Transp., Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)). The movant bears the burden of establishing the first two, "most critical," factors. *Reilly*, 858 F.3d at 179 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

A preliminary injunction should not be issued where material issues of fact are in dispute. *PRS in Vivo Holdings, Inc. v. Peters*, No. 24-8223, 2024 WL 3995167 (D.N.J. Aug. 27, 2024); *Collick v. Weeks Marine, Inc.*, 397 Fed. App'x 762, 764 (3d Cir. 2010) (preliminary injunction is inappropriate where there is an "abundance of contradictory facts on both sides of the record").

## IV. DISCUSSION

This action is, fundamentally, a contractual dispute with Plaintiff demanding specific performance pursuant to the GIA. "Indemnity agreements are interpreted in accordance with general principles of contract law." *XL Specialty Ins. Co. v. Interstate Indus. Corp.*, (D.N.J. Aug. 18, 2009) (citing *IFC Interconsult, AG v. Safeguard Intern. Partners, LLC*, 438 F.3d 298, 317 (3d

5

Cir. 2006). "Summary resolution of indemnity disputes with unambiguous contractual provisions is appropriate[,]" where the terms of an indemnity agreement are clear. *N. Am. Specialty Ins. Co. v. Cardinal Contr. Co., LLC*, No. 20-47094, 2022 U.S. Dist. LEXIS 1155410 at *4-5 (D.N.J. Jun. 29, 2022) (internal citations omitted). Thus, courts are instructed to enforce the plain language of an agreement when there is no ambiguity. *Id.*

### A. Reasonable Probability of Success on the Merits

The requirement of "likelihood of success on the merits" is satisfied "if the moving party make[s] a showing of a reasonable probability, not the certainty, of success on the merits." *Aleynikov v. Goldman Sachs Group, Inc.*, No. 12-5994, 2012 U.S. Dist. LEXIS 181852 at *23-24 (D.N.J. Dec. 14, 2012). After careful review of the papers and after hearing oral argument, the Court finds that Plaintiff is likely to have success on the merits as it relates to Plaintiff's discharge demand in the full penal sum of the outstanding Bonds. The parties negotiated and freely entered into the GIA agreement, which holds in pertinent part that:

> DISCHARGE AND ADDITIONAL SECURITY
> THIRD: **The Contractor and Indemnitors will, upon the written request of the Surety, promptly procure the full and complete discharge of the Surety from any Bonds specified in such request and all potential liability by reason of such Bonds.** If such full and complete discharge is unattainable, the Contractor and Indemnitors will, if requested by the Surety, within five (5) business days, place the Surety in funds that are immediately available and sufficient to meet all of the Surety's liabilities that are in force prior to the date of the Surety's demand. **The Surety may make such demand for funds at any time and without regard to whether it has sustained any loss or received any claim.** The amount of such demand, including reasonable attorney fees and expenses, is at the sole discretion of the Surety.

Mot. for Preliminary Inj. at Ex. A, (emphasis added). Here, the Court notes that the parties agreed that the Indemnitors (Defendants) would, upon the written request of the Surety, (which occurred on January 23, 2025, *see* Mot. for Preliminary Inj. at Ex. F), procure the discharge of any Bonds

6

and all potential liability from such Bonds, regardless as to whether any loss or claim had been received. When read against the agreement as a whole, the structure and contents of this paragraph indicate that it is an independent obligation of the contract: it does not require any preconditions from any other part of the contract to be in effect to permit the Surety to request the discharge of any outstanding bonds. It is clear from the four corners of the writing that all the Surety must do to initiate the discharge of the Bonds is to provide a written request, irrespective of whether any loss as been sustained or any claim has been put forth. It does not need for a claim to be asserted or actualized for the Surety to act, as required in paragraph 2, which states in pertinent part:

> INDEMNITY
> SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature . . . and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. The Contractor and Indemnitors shall deposit with the Surety on demand an amount of money or other collateral security acceptable to the Surety, **as soon as liability exists or is asserted against the Surety**, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to protect it from loss.

Mot. for Preliminary Inj. at Ex. A, (emphasis added). Here, for the Surety to request indemnification, liability must exist or be asserted against the Surety. Clearly, if the contract intended the Surety to be constricted in its ability to demand discharge and additional security, the parties would have written that paragraph to contain restrictions as demonstrated by paragraph two.[2]

---

[2] The notice of possible default alone is not sufficient to trigger the obligations to provide indemnification in paragraph two precisely because paragraph two requires that liability be extant or asserted against the Surety. For liability to be asserted pursuant to the Newark Bond, all provisions of paragraph two must be met:

7

Defendants argue that paragraph three must be limited in its scope due to the inclusion of an alternative solution if "full and complete" discharge is unattainable: that "the Contractor and Indemnitors will, if requested by the Surety, within five (5) business days, place the Surety in funds that are immediately available and sufficient to meet all of the Surety's liabilities that are in force prior to the date of the Surety's demand." Mot. for Preliminary Inj. at Ex. A; *see also* Oral Argument Tr. at 47:18-25. Even so, the contract language specifically asserts that the amount of any demand is within the Surety's sole discretion, and that even if discharge can not be obtained immediately, (or if a contractor or indemnitor fails to comply with the demand), the contract provides "authority to confess judgment . . . from time to time and more than one time until all liability [of Defendants] have been paid in full." Mot. for Preliminary Inj. at Ex. A. This language suggests that the demand need not be limited by any liabilities in force, rather that such alternative could be available if needed by the Indemnitor or Contractor due to liquidity or other issues and preserves the right for the Surety to obtain full discharge over time.

While the provisions of paragraph three are written broadly, the demand letter from Plaintiff in this matter was not issued on a whim. It is undisputed that Plaintiff received the notice

---

If there is no Owner Default, Surety's obligation under this Bond shall arise after:

2.1 Owner has notified Contractor and Surety . . . that Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with Contractor and Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the Contract . . . and

2.2 Owner has declared a Contractor Default and formally terminated Contractor's right to complete the Contract . . . and

2.3 Owner has agreed to pay the Balance of the Contract Price to:
1. Surety in accordance with the terms of the Contract; or
2. Another contractor . . . to perform the contract.

Mot. for Preliminary Inj. at Ex. B. The Court notes that the notice of potential default and the meeting held by the parties with Newark satisfies the first requirement, (2.1), to assert liability against the Surety (Plaintiff) pursuant to the terms of the Newark Bond. Compl. at ¶ 28; Mot. for Preliminary Inj. at Ex. F. However, the contract clearly requires two additional events before liability can be levied against Plaintiff: Defendant must be declared in default and their right to complete the contract terminated, (2.2), and Newark would have to agree to pay the balance of the contract price to either the Surety or another contractor to perform the contract, (2.3). Because these two conditions have not yet been met, no liability has been asserted nor has any loss incurred from the Newark Bond, and thus paragraph two of the GIA is not currently a basis to claim indemnity from Defendants.

8

of potential default from the City of Newark,[3] (*see* Mot. for Preliminary Inj. at Ex. F), which is an event that gives Plaintiff a good-faith basis[4] to demand discharge pursuant to the GIA's terms under paragraph three, which does not require a claim to be asserted or a loss to be incurred.

Therefore, the Court finds that on the basis of paragraph 3, Plaintiff has a likelihood of success on the merits, satisfying the first factor to institute a preliminary injunction.

### B. Irreparable Injury

"In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Thus, the "preliminary injunction must be the only way of protecting the plaintiff from harm." *Id.* The harm must be temporally immediate, "not merely serious or substantial, and it must be of a peculiar nature, so that compensation in money cannot atone for it." *Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). Failure to establish irreparable injury automatically results in denial of a preliminary injunction. *Instant Air Freight Co.*, 882 F.2d at 800.

The Court notes that, while there are no cases on point that it can find regarding irreparable injury regarding the discharge of bonds, there are more cases that demonstrate that collateralization is not considered a monetary remedy because the collateral reserve prevents the surety from being a "general unsecured creditor," a status which the parties have contracted to prevent. *See Int'l Fid.*

---

[3] The Court notes that while the notice was accompanied by a criminal complaint, the notice of potential default itself, regardless of what created that potential for default, presented sufficient possible, future risk to Plaintiff to have a good faith basis to request for discharge pursuant to the GIA paragraph three. Further, the issuance of the potential default notice suggests that, while the Newark Bond may be "expired" from the date of Defendant's asserted substantial completion in August of 2021, the City of Newark's allegations of fraud in October of 2024 provides a statute of limitations of six years pursuant to New Jersey law, *see Sweeney v. Trinity Highway Prods., LLC*, No. 16-765, 2016 U.S. Dist. LEXIS 174139 at *4 n.1 (D.N.J. Dec. 16, 2016), which, if successfully litigated, would open Plaintiff to liability.

[4] All contracts contain an implied covenant of good faith and fair dealing pursuant to New Jersey law. *See N. Am. Specialty Ins. Co. v. Cardinal Contr. Co., LLC*, No. 20-47094, 2022 U.S. Dist. LEXIS 1155410 at *7 (D.N.J. Jun. 29, 2022).

9

*Ins. Co. v. Anchor Envtl., Inc.*, (E.D. Pa. May 1, 2008); *Westchester Fire Ins. Co. v. Global Real Constr., LLC*, No. 9-207, 2009 WL 137414 at *2 (D.N.J. Jan. 16, 2009); *United States Fid. & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 588 (M.D. Pa. 1998). Pursuant to the agreement at bar, discharge is an alternative contractual remedy to prevent Plaintiff from becoming a general creditor to Defendants. *See* Mot. for Preliminary Inj. at Ex. A at ¶ 3.

Similarly, while there are no cases on point that relate specifically to discharge as the specific performance requested, "courts have routinely granted specific performance to enforce collateral security provisions, specifically where no conditions precedent to providing collateral funds exist other than the surety's demand for reserves pursuant to an explicit provision in an indemnity agreement." *XL Specialty Ins. Co. v. Interstate Indus. Corp.*, No. 9-82, 2009 WL 2568077 at *3 (D.N.J. Aug. 18, 2009). Here, discharge pursuant to the GIA also has no conditions precedent to providing discharge other than the surety's demand. *See* Mot. for Preliminary Inj. at Ex. A at ¶ 3.

Given that the intent of the discharge provision is to protect the surety from the same harm as the collateral provision, and the discharge provision itself is clear and unambiguous, with no conditions precedent other than the demand of the surety to invoke the remedy sought, the Court finds that comparable treatment of the discharge provision is warranted.

This finding does not end the Court's analysis of the second factor for preliminary injunctive relief. To justify the Court's use of an extraordinary remedy, the injury must not only be irreparable, it also must be temporally immediate. Here, Plaintiff points to the fact that Defendants have not provided the demanded collateral and have not given Plaintiff access to the books and records as reason to believe that, coupled with the allegations made in a criminal complaint against Defendants, there is significant risk that Defendants will not indemnify Plaintiff

because the "type of liability is far more sinister and far more serious." Oral Argument Tr. at 38:22-23. Ostensibly, Plaintiff is concerned about the possibility of being defrauded by Defendants.

However, as the Court noted at the hearing, Defendants are presumed innocent until proven guilty, and in *this* litigation, all that Plaintiff has provided on this point is the initiation of a criminal complaint that is far from resolved. This is where both parties have a dispute of material fact, which is fatal to Plaintiff's request for preliminary injunction. *See PRS in Vivo Holdings, Inc. v. Peters,* No. 24-8223, 2024 WL 3995167 at * (D.N.J. Aug. 27, 2024) ("Importantly, a preliminary injunction should not be issued where material issues of fact are in dispute."). Further, to obtain a preliminary injunction, it is the plaintiff's burden to demonstrate a clear showing of *immediate* irreparable injury, and here, the injury as articulated is not plainly immediate: Defendants are not on the run but are in fact present before the Court and are willing to discuss a way forward with regard to the books and records request. Without more, the Court cannot issue a preliminary injunction because "[f]ailure to establish irreparable injury automatically results in denial of a preliminary injunction." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 800 (3d Cir. 1989).

### C. Books and Records Request

Defendants assert that they would be agreeable to providing Plaintiff with "reasonable" access to their books and records, but objects to the extensive document requests for records that they assert do not exist. It is clear from the GIA that Plaintiff has the right to "reasonable access to the books, records, and accounts," of Defendants until the Bonds are terminated and that Plaintiff would succeed on the merits of this claim. Mot. for Preliminary Inj. at Ex. A. Moreover, the right to inspect books and records has been found in other courts to be an injury that merits equitable

relief: lack of access causes "irreparable damage and loss because of its likely inability to be secured in advance against claims and losses, and Defendants be left free to sell, transfer, dispose of, lien, secure or otherwise divert or conceal their assets from being used to discharge their obligations to exonerate and indemnify [the plaintiff.]" *See RLI Ins. Co v. Nexus Servs.*, No. 18-66, 2018 WL 3244413 at *7 (W.D. Va. Jul. 2, 2018) (quoting *Developers Sur. & Indem. Co.*, No. 9-21678, 2009 WL 3831437 at *2 (S.D. Fla. Nov. 13, 2009)) (collecting cases). This is especially true where a defendant has failed to post collateral or produce financial statements, and where there is a valid concern regarding an entity's solvency or investigation by prosecuting authorities, (*id.* at *8-9), and such facts are present in this case. Crucially, Defendants have failed to post collateral, are disputing producing financial statements, and there is a criminal indictment relating to the parties' project in Newark. It is in the public's interest for the Court to enforce and uphold freely negotiated contracts, (*HouseMaster SPV LLC v. Burke*, No. 21-13411, 2022 WL 2373874 at *10 (D.N.J. Jun. 30, 2022)), and there is no harm to Defendants in holding them to their bargain with regards to books and records access.

Therefore, this Court will order the parties to meet and confer with the benefit of the Magistrate Judge to facilitate the examination of the books and records by Plaintiff, including those records related to the Newark Bond.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Preliminary Injunction, (ECF No. 2), is **GRANTED IN PART AND DENIED IN PART**. An order consistent with this Opinion will be entered.

April 30, 2025

KAREN M. WILLIAMS, U.S.D.J.

12